## STATE OF OHIO, Plaintiff-Appellee, v. VICORY et, Defendants-Appellants.

Ohio Appeals, Second District, Preble County.

No. 109.   Decided February 8, 1943.

John M. Kiracofe, Prosecuting Attorney, Eaton; Julian Clark, Asst. Prosecuting Attorney, Eaton, for plaintiff-appellee.

Herman D. Arnovitz, Dayton, for defendant-appellant, Glenn Vicory.

C. H. Supinger, Dayton, for defendant-appellant, George Nohacs.

### OPINION

By GEIGER, P. J.

This is an appeal from the judgment of the Court of Common Pleas of Preble county, based upon a vredict of guilty by a jury.

The incident leading up to the litigation now before us was an alleged armed robbery of the filling station located on the Main Street of Eaton.   Glenn Vicory and George Nohacs were indicted and upon trial, both were found guilty.   It does not clearly appear from the papers before us as to whether both defendants have appealed, but inasmuch as they were charged and tried under the same indictment we will assume that there is an appeal by each. Both defendants were sentenced to the penitentiary for a period of from ten to twenty-five years.

The evidence tended to show that on the night of April 4, 1942, two men were attending the filling station located at the corner of Main and Beach Streets in the city of Eaton, Ohio. One was Tusco Young, and the other Howard Stevens. At about 10:00 P. M. two men, one masked and the other unmasked entered the station. The unmasked man wore a green colored hat drawn down over his eyes. This man held in his hand and pointed at Young a revolver and announced that it was a hold-up. Thereupon the other of the two robbers approached the cash register, but was unable to open it, and Young upon demand from him opened the register, whereupon the masked man took from the same about $22.00. The two attendants in the gas station were then herded into a small toilet room where they remained until they saw the two robbers pass in front of a window on the way to the back end of the lot upon which the station was located.

Young positively identified each of the men at the time of the trial, giving the details of the description which enabled him to positively state his identification. One of the marks of identification was such that if it were not true, the jury could at once detect the error in the witness' statement. That statement referred to the peculiar eyes of the defendant.

Stevens was not able to identify the defendant, Glenn Vicory, as one of the two robbers.

Young asserted that he had been long in attendance upon gas stations and was accustomed to make observation as to the characteristics of his customers, and that as a result of this practice he readily detected and could retain in mind the peculiarities of both men who entered the station. There is some difference as to the exact time that the men took to complete the job, it being testified that it was from three to four minutes. At the time the robbery was going on a young woman by the name of Ruth Schmidt passed in front of the station and saw the robbery, and soon observed the two men coming out of the building and proceeding across a lighted portion of the lot toward an automobile, which they entered. She saw and remembered the number of the automobile license, asserting that it was A-300-QV. Neither of the witnesses at the station knew the names of the robbers, but ascertained them later, and applied their description to each. Young testifies that there was a difference in the height of the two men, and that the shorter of the two was the one who announced the fact that it was a hold-up. This one had the gun and had the deep set eyes which served as a mark of identification.

It appears from other evidence than of the two seated in the filling station, that on the same night an automobile had been stolen from Dayton, and that it bore the license number noted by Miss Schmidt. The next morning a car bearing the same license number was found wrecked along a small stream near a road familiar to Glenn Vicory. When the automobile was found a re-

volver and a green colored hat were also found near by which were turned over to the officers and which were offered in evidence against the objection by counsel. The court overruled the objection to which exceptions were taken.

Counsel for defendant states that there were eight assignments of error filed in the case, "only one of which, No. 6, is now seriously and vehemently urged upon this court by counsel for the defendant-Appellant, George Nohacs. Said assignment of error is: 'The court erred in admitting into evidence that hat and gun offered by appellee and the testimony in regard to an allegedly stolen automobile offered by appellee over the objection and exception of the appellant.' "

Counsel having thus waived all claim of error in the other assignments, we shall confine our observation to the one upon which he now insists with some additional comments as to the evidence.

The contention of the defendant-appellant, Nohacs, is that the admission of the evidence of a stolen automobile found wrecked, and the gun and hat found in or near thereto, was wrong, and that said evidence was incompetent and prejudicial. The undisputed facts indicate that two were engaged in a common enterprise; that one had his face partly concealed by a mask and that the other carried the gun and wore a hat of a peculiar color. The objection is made that as the witness Stevens did not identify Vicory, but testified that he was the one carrying the gun and wearing the hat, that evidence of either the gun or the hat was incompetent against Nohacs. We are of the opinion that the evidence was proper. There were two robbers, one wore the hat and carried the gun. Both were seen to enter the automobile bearing the number of the wrecked car. The evidence of the gun and the hat, although the same belonged to Vicory and not to Nohacs, was proper in helping the jury to determine whether Nohacs was as a matter of fact one of the robbers.

It appears that these two men jointly indicted had gone to Mansfield Reformatory at the same time some years ago, for breaking and entering and had been released a short time before the robbery. Upon their arrest each had upon his body numerous and deep lacerations, the inference sought to be established by this being that they were injured at the time the automobile went off the road. Each gave a fanciful account of the bruises and lacerations upon his body. One stated that it was caused in wrestling with his three year old son, and the other that when he was proceeding along the street in Dayton, he was jostled by a stranger which lead to an altercation and then to a fight, and that the stranger knocked him down. We believe the jury was amply justified in discarding these accounts of the bruised condition of the bodies of the two men and could properly attribute them to the wreck of the automobile into which they entered immediately after the robbery.

We see no reason why the evidence of the revolver, the hat and the wrecked automobile was not proper to assist in the identification of the two robbers.

Both of the men attempted to establish an alibi. They have the customary parade of members of their family, testifying that during the whole time covered by the robbery each was at a different place, one engaged in coloring Easter eggs and the other in going to a movie with his brother. Alibis are good if they are honest, and very weak if not properly sustained.

If the appeal in this case is by Nohacs alone, the judgment of the court below will be sustained and the defendant remanded to the Court of Common Pleas. If the appeal is by both of the defendants, the same order will be made as to each.

BARNES and HORNBECK, JJ., concur.

## APPLICATION FOR REHEARING

### No. 109. Decided April 3, 1943

BY THE COURT:

This matter is before us upon the motion of the defendant-appellant, Glenn Vicory, for a rehearing for four enumerated reasons:

(1) That the judge in writing the decision misstated the facts as established by the transcript;

(2) The proper consideration was not given to the appeal of the defendant-appellant herein;

(3) The decision was rendered without considering the evidence of the defendant-appellant herein; and

(4) For all other reasons apparent upon the face of the record.

Were it not for the fact that the court has had experience where counsel, in the zest for the interest of their client, have made comments upon the court's opinion, the apparent temper of which is not justified by the facts, we might be disturbed by the apparent harshness of counsel's language. Counsel might easily realize that frequently the briefs are not so clear as to make the court's comments thereon infallible in accuracy. Counsel's over-critical view of a court decision should not move the court to make a discourteous rejoinder.

The defendant in this case, who has been convicted of a serious offense, must be given every favorable consideration.

Of course he starts out in this court in a rather unfavorable position. He has been convicted by a jury of his fellow citizens and that conviction has stood against the examination of the trial court on a motion for a new trial. While a court of review is at liberty to rely heavily upon the decision of the trial court, on the ground that he has had the opportunity to hear the witnesses

testify orally, to observe the conduct of the parties and to listen to the argument of counsel at greater length than a reviewing court may give to the case, this court is conscious of the fact that it is required to pass upon all errors complained of, and if the court has inadvertently omitted one, possibly is due to the fact that counsel has confused their allegations of error in order to make an impressive enumeration.

Counsel assert in their first brief the fact that of all the errors complained of they insist only upon one and that was the introduction of the testimony in reference to the hat and pistol found at the scene of the wreck. After having searched diligently among the original papers for the docket and journal entries, we secured a copy of the same from the clerk of the court, accompanied, however, by the statement that the docket and journal entry was furnished on July 17th. The transcript shows good reason why the court may have been confused somewhat in reference to matters touched upon in his former decision. Many of the entries were **nunc pro tunc,** and in a number of them there was no designation of which of the two defendants was referred to in the particular entry. The brief of counsel did not clearly indicate which of the two he was representing.

However that may be, the court has gone over the matter carefully, reexamining the evidence and the alleged errors and while the member of the court who wrote the opinion is willing to concede that there may be some inaccurate references to one or the other of the defendants, yet we find that if that be a fact it does not in any way require that this court reverse the judgment of the trial court. Both defendants were present at an armed robbery and participated therein and each was sufficiently identified. We do not believe it would accomplish anything by restating the evidence in this case.

Motion for rehearing denied. Cause remanded.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.